UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Clinton Bedell,

        Petitioner,

        v.                            Civil Action No. 5:18-cv-46-gwc-jmc

Lisa Menard,

        Respondent.

## REPORT AND RECOMMENDATION
(Docs. 5, 40)

    Petitioner Clinton Bedell, proceeding *pro se*, has filed a Petition pursuant to 28 U.S.C. § 2254, seeking to vacate his conviction for the sexual assault of a child. (Doc. 5.)  Respondent Lisa Menard has filed a Response, principally arguing that Bedell has not exhausted the remedies available in state court and that, in any case, his claim fails on the merits.  (Doc. 27 at 3–4.)  In a supplemental brief ordered by this Court (Doc. 29), Menard also argues that Bedell's petition is barred by the one-year statute of limitations set forth in 28 U.S.C. § 2244(d)(1).  (Doc. 34 at 1–2.) Bedell has filed a supplemental brief contending that he has satisfied the statute of limitations.  (Doc. 35.)

    Also pending before this Court is a letter filed by Bedell while his habeas petition was pending, which requests a "transport order" allowing him to be moved to a Vermont prison.[1]  (Doc. 40 at 1.)  In the letter—which the Court construes as a

---

[1]  In a July 2018 Report and Recommendation, this Court addressed a number of dispositive and non-dispositive motions filed by Bedell (Doc. 42); the district court later adopted that Report and Recommendation without modification.  (Doc. 45.)

motion for injunctive relief under 42 U.S.C. § 1983—Bedell alleges that prison officials in the Pennsylvania Department of Corrections (PA-DOC) intentionally acted to deny Bedell's meaningful access to the courts.  (*Id.*)  At this time, Menard has not yet responded to this motion.

For the reasons set forth below, I recommend that Bedell's habeas petition (Doc. 5) be DENIED, and that his request for injunctive relief pursuant to 42 U.S.C. § 1983 (Doc. 40) also be DENIED.

## Factual and Procedural Background

On February 4, 1998, Bedell appeared before the Washington County Superior Court for the purpose of entering a plea of guilty to sexual assault of a minor after impregnating his daughter.  (*See generally* Doc. 27-18.)  At the proceeding, however, Bedell's counsel informed the court that Bedell "had taken a number of Ativan, . . . an anti-anxiety medication and Percocet, and appeared to be nodding out as a result."  (*Id.* at 2.)  Given that Bedell was physically incapacitated by the medication, the superior court declined to conduct the change-of-plea proceeding.  (*Id.* at 6–8.)  Instead, the court ordered that Bedell be housed overnight in the Vermont State Hospital, so that a doctor could determine whether and when Bedell was free of drugs and able to enter his plea knowingly and voluntarily.  (*Id.* at 8.)

Bedell returned to court the next day—February 5, 1998—and the prosecutor stated that Bedell's counsel had informed the prosecutor that Bedell was "competent and fine today because of his stay last night at the hospital."

(Doc. 27-19 at 3.)  The prosecutor then advised the court that, although Bedell had previously signed an agreement to enter a guilty plea, the agreement had "fallen apart."  (*Id*.)  Upon receiving this news, the court decided not to postpone the trial, which had been scheduled for the following week (*id*. at 7), but adjourned briefly so that the attorneys could attempt to contact their witnesses to ensure their availability.  (*Id*. at 16–17.)  During this adjournment, Bedell reversed his decision to go to trial and again decided to plead guilty.  (*Id*. at 17–19.)

Given Bedell's second change of heart, the superior court conducted a comprehensive plea colloquy of Bedell.[2]  The court began by questioning Bedell to ensure that he understood the charge he was facing:

> [Y]ou're aware that by the terms of the notice of plea agreement that what the State is going to be recommending is that there would be a plea to the charge that during the fall of 1996, . . . you engaged in a sexual act with another person under the age of 16, to wit, E.B., . . . , and that you, the actor, would be at least 18 years of age, reside in the victim's household, and serve in a parental role with respect to the victim, all in violation of 13 V.S.A. [§] 3252(b)(2).

(*Id*. at 19.)  Bedell responded, "Yes, Your Honor," and affirmed that he was waiving his constitutional rights by pleading guilty.  (*Id*. at 19–20.)  The superior court next

---

[2]  It does not appear from the transcript that Bedell was placed under oath, however, neither the Vermont Rules of Criminal Procedure nor the Federal Rules of Criminal Procedure require that a defendant be placed under oath for a court to determine that a plea is knowing and voluntary for the court to accept a guilty plea.  *See* Vt. R. Crim. P. 11; Fed. R. Crim. P. 11(b)(1); *see generally Wilson v. Richards*, Nos. 14–cv–2459 (AJN), 14–cv–6262 (AJN), 2014 WL 6682579, at *3 (S.D.N.Y. Nov. 25, 2014) ("It is not error to conduct a Rule 11 plea colloquy without placing a defendant under oath."); *United States v. Journet*, 544 F.2d 633, 637 n.6 (2d Cir. 1976) (acknowledging that courts are not required to place defendants under oath at plea hearing); *In re Hall*, 143 Vt. 590, 597, 469 A.2d 756, 759 (1983) ("No set ritual is required of the trial court in its determination of whether a guilty plea is made voluntarily and knowingly.").

questioned Bedell to confirm that Bedell's plea was voluntary and he was

competent:

> THE COURT: . . . And have there been any other promises made to you?
>
> MR. BEDELL: Just that[, the plea agreement].
>
> THE COURT: Right. Has anyone threatened you or coerced you, twisted your arm?
>
> MR. BEDELL: No, Your Honor.
>
> THE COURT: And how are you feeling today, other than this is stressful?
>
> MR. BEDELL: Yes, Your Honor.
>
> THE COURT: Okay. Do you think that yesterday there had been too much medication, or there was a lot of medication that you had consumed. Today—
>
> MR. BEDELL: Other than Paxil,[3] they haven't given me anything today, Your Honor.
>
> THE COURT: Okay. Has that allowed you to devote the time and energy that you need to in order to think clearly through this whole process?
>
> MR. BEDELL: It gave me a better frame of mind.

(*Id.* at 21.) The court then asked Bedell's defense counsel to reiterate that Bedell

understood everything fully and completely. (*Id.* at 22.) Counsel replied in the

affirmative and stated that a doctor from the Vermont State Hospital had confirmed

that Bedell was no longer intoxicated and that he could make competent choices.

(*Id.*) After being questioned again by the superior court, Bedell stated that he was

satisfied with his counsel's assessment of his competency. (*Id.* at 22–23.)

---

[3] The record indicates that this medicine was prescribed by Bedell's doctor and did not implicate Bedell's competency. (Doc. 27-19 at 3, 21.)

The prosecutor then recited the factual basis for the charge, specifically stating that Bedell "had sexual contact with his daughter . . . at their family home in Northfield in the fall of 1996," at a time when his daughter was "approximately 12 years old" and further averring that Bedell "essentially admitted those facts" in an interview with the investigating police officer in November 1997. (*Id.* at 23.) Bedell agreed with this summary of the facts, and both he and his attorney stated that the summary provided a factual basis for the plea. (*Id.* at 24.) Then, the court again questioned Bedell regarding the voluntary nature of the plea:

> THE COURT: Okay. The last area that I want to cover has to do with whether or not this is your free act or someone is twisting your arm, forcing you to enter into the plea.
>
> MR. BEDELL: This is my free act.

(*Id.* at 25.) Accordingly, the superior court found that Bedell's decision to enter the plea had been made knowingly and voluntarily of his own free will. (*Id.*) Bedell then pleaded guilty to the charge (*id.*), and the superior court imposed a sentence of 6 to 35 years to serve, as set forth in the plea agreement. (*Id.* at 26, 30.)

Subsequently, Bedell challenged his conviction on direct review, asserting, among other arguments, that his conduct arose from his religious beliefs as a member of the Church of Jesus Christ of Latter-Day Saints (commonly called the Mormon Church) and that, as a result, his conviction violated his constitutional right to the free exercise of religion. *State v. Bedell*, No. 1999-115 (Vt. Nov. 24, 1999) (unreported. mem.); (Doc. 27-7 at 3). He further asserted that he had married his daughter according to the polygamy doctrines espoused by the fundamentalist

Mormon Church and that, therefore, he could not be prosecuted under Vt. Stat. Ann. tit. 13, § 3252(b)(2), which provides an exception to the sexual assault statute for married persons under the age of 16 who consent to the sexual act. (Doc. 27-7 at 3.) On November 24, 1999, following oral argument, the Vermont Supreme Court affirmed Bedell's conviction, concluding that Bedell waived any objection to his conviction by pleading guilty, and that, in any case, his constitutional claims lacked merit. (*Id.*) Apparently, during oral argument, Bedell also claimed that his guilty plea was coerced, but the Supreme Court declined to address that claim because it was asserted for the first time on appeal. (*Id.* at 4.)

In March 2000, Bedell unsuccessfully sought reconsideration of his sentence in the superior court and, after the superior court denied the motion, the Vermont Supreme Court affirmed the denial in December 2000. *State v. Bedell*, Nos. 2002-244, 2003-047, 2003 WL 25745982, at *1 (Vt. April 2003) (unreported mem.). At approximately the same time, Bedell twice sought relief in this Court. *See Bedell v. Hatch*, No. 1:99-cv-00313-jgm (D. Vt. Oct. 15, 1999); *Bedell v. Gorczyk*, Docket No. 1:00-cv-00154-jgm-jjn (D. Vt. May 9, 2000). In both cases, although Bedell initially brought suit under 42 U.S.C. § 1983, he also filed petitions for habeas relief, each of which was denied for failure to exhaust state court remedies. *See Bedell*, No. 1:99-cv-00313-jgm, Doc. 73, Doc. 81 at 28; *Bedell*, No. 1:00-cv-00154-jgm-jjn, Doc. 5, Doc. 7.

In May 2002, in superior court, Bedell moved for a second time for reconsideration of his sentence and also filed a petition for post-conviction relief.

*Bedell*, 2003 WL 25745982, at *1. The superior court denied the motion for reconsideration and the petition for post-conviction relief. *Id.* In April 2003, the Vermont Supreme Court affirmed both superior court decisions in a consolidated appeal, determining that Bedell's second motion for reconsideration was untimely and that the petition for post-conviction relief had been filed in an improper venue. *Id.* at *2.

Sometime in 2006, approximately seven years after his original judgment of conviction was affirmed on appeal, Bedell filed a second motion for reconsideration, raising several new arguments and again arguing that his conviction was unconstitutional. *See In re Bedell*, No. 2006-519, 2007 WL 5313337 (Vt. April 1, 2007) (unreported mem.). On April 1, 2007, the Vermont Supreme Court affirmed the superior's court's dismissal of this second motion for reconsideration, concluding that Bedell's new arguments had no merit and that his constitutional claims could not be reconsidered because the arguments had previously been addressed on direct appeal. *Id.* at *2.

Subsequently, in July 2009, Bedell filed a complaint in superior court pursuant to Vermont Rule of Civil Procedure 75, reiterating his argument that "he should not have been prosecuted for sexual assault because he wanted to marry his daughter." *Bedell v. Washington Cty. State's Attorney*, No 2009-341, 2010 WL 716111, at *1 (Vt. Feb. 25, 2010) (unreported mem.). The court dismissed the complaint, finding it "unintelligible." *Id.* The Vermont Supreme Court affirmed the dismissal on appeal, stating: "To the extent [Bedell's] arguments can be discerned,

they appear to relate to issues previously decided by this Court." *Id.* For similar reasons, on June 1, 2011, the Vermont Supreme Court affirmed the superior court's dismissal of yet another petition for post-conviction relief filed by Bedell. *Bedell v. State*, No. 2010-474, 2011 WL 4975583, at *1 (Vt. June 1, 2011) (holding Bedell had not "set forth comprehensible arguments demonstrating error").

Then, on September 11, 2015, Bedell again sought collateral relief in superior court, asserting in part that his conduct qualified for the "marriage exception" set forth in Vt. Stat. Ann. tit. 13, § 3252(a)(3), that his conviction violated his religious beliefs, and that his plea was involuntary. *Bedell v. State*, No. 585-9-15 Wncv, 2016 WL 10860906, at *1 (Vt. Super. Ct. Dec. 6, 2016); (*see also* Doc. 27-5). In a December 6, 2016 ruling, the superior court dismissed Bedell's constitutional claim along with Bedell's claim that his conduct fell under the statutory "marriage exception"; however, the court concluded that Bedell had plausibly stated a claim that his plea was involuntary. *Bedell*, 2016 WL 10860906, at *1. According to Menard, this claim is still pending before the superior court. (Doc. 27 at 2–4; *see* Doc. 27-5.) The most recent order in that case appears to have been entered on August 15, 2018, and indicates that the superior court is awaiting briefing relating to a summary judgment motion filed by Menard.[4] *Bedell v. State*, 585-9-15 Wncv (Vt. Super Ct. Aug. 15, 2018).

---

[4] Because neither party provided an updated docket sheet, the Court takes judicial notice of the most recent docket entries in *Bedell v. State of Vermont*, 585-9-15 Wncv (Vt. Super Ct. Aug. 15, 2018). *See* Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *Singh v. United States Dep't of Homeland Sec.*, 526 F.3d 72, 80 n.9 (2d Cir. 2008) (taking judicial notice of trial court docket sheet).

In his present habeas petition, Bedell reiterates the constitutional challenges he has raised multiple times in the superior court, asserting that his conviction under Vt. Stat. Ann. tit. 13, § 3252(b)(2) should be invalidated because he is a "fundamentalist Mormon with a belief" in polygamy who was legally married to his daughter when the conduct occurred. (Doc. 5 at 1–2.) Alternatively, he claims that his conviction should be vacated because his plea was either involuntary or coerced. (*Id.* at 1.) Finally, in a supplemental brief, Bedell claims that his habeas petition is timely, arguing that he filed it in "Nov 1999 . . . within . . . one year" and that he "asked this Court to freeze that submission." (Doc. 35 at 1.)

Menard opposes Bedell's petition, contending that Bedell has not yet exhausted his remedies available in state court. (Doc. 27 at 3–4.) In particular, Menard points out that Bedell's claim that his plea was involuntary or coerced remains pending in state court. (*Id.*) Menard also argues that Bedell "asserts no cognizable rights under either the U.S. Constitution or U.S. Statutes." (*Id.* at 5.) Finally, in a supplemental brief, Menard claims that Bedell's habeas petition is barred by the one-year statute of limitations set forth in 28 U.S.C. § 2244(d)(1). (Doc. 34 at 1–2.)

As noted above, after this Court received the parties' supplemental briefing and while Bedell's habeas petition was still pending, Bedell filed a letter with the Court requesting a "transport order" allowing him to be moved to a Vermont prison. (Doc. 40 at 1.) In support of this request, Bedell alleges that Pennsylvania correctional officers have intentionally acted to prevent his meaningful access to the

courts, including destroying his personal belongings and legal work, along with placing him in segregation. (*Id.*) Bedell attaches to his letter a report from the PA-DOC, which indicates that Bedell was placed in "protective custody" to ensure his "safety or welfare when it is not possible to protect him by other means." (Doc. 40-1 at 1.) Menard has not responded to this filing.

## Analysis

Bedell proceeds *pro se*; therefore, his petition must be held to "less stringent standards than formal pleadings drafted by lawyers." *Rodriguez v. United States*, 206 F. Supp. 3d 862, 864 (S.D.N.Y. 2016) (internal quotation marks omitted); *see McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) ("[W]e read the pleadings of a *pro se* plaintiff liberally and interpret them to raise the strongest arguments that they suggest." (internal quotation marks omitted)). Nevertheless, a *pro se* litigant is not exempt "from compliance with relevant rules of procedural and substantive law." *Boddie v. N.Y. State Div. of Parole*, 285 F. Supp. 2d 421, 426 (S.D.N.Y. 2003) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

Here, as explained below, Bedell's habeas petition is barred by the statute of limitations; alternatively, it fails to establish that Bedell's conviction violated federal law. Accordingly, the petition should be DENIED. Bedell's motion for injunctive relief brought pursuant to 42 U.S.C. § 1983 (Doc. 40) should also be DENIED, for failure to state a claim upon which relief may be granted.

## I.    Statute of Limitations

As a threshold matter, I conclude that Bedell's petition is barred by the one-year statute of limitations set forth in 28 U.S.C. § 2244(d).  To be timely, a prisoner in custody pursuant to the judgment of a state court must file a petition within one year of the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).  This one-year period tolls while a petitioner's properly filed application for post-conviction relief is pending in state court.  *Id.* § 2244(d)(2); *Amante v. Walker*, 268 F. Supp. 2d 154, 156 (E.D.N.Y. 2003).

Applying the first subsection of this statute, 28 U.S.C. § 2244(d)(1)(A), it is plain that Bedell filed the present petition well over a year after his conviction became final.  The Vermont Supreme Court upheld Bedell's conviction on November 24, 1999.  (Doc. 27-7.)  Under U.S. Supreme Court Rule 13.1, a petition for certiorari must be filed within 90 days after the order denying discretionary review is entered.  *See also Amante*, 268 F. Supp. at 156 ("[A] petitioner has ninety days from the entry

11

of judgment in the underlying state action to seek certiorari from the Supreme Court."). Bedell did not file a petition for certiorari, and thus his conviction became final 90 days later, on February 22, 2000. *Id.* In March 2000, Bedell moved for reconsideration of his sentence in Vermont superior court, and the court denied the motion; the Vermont Supreme Court affirmed that denial in December 2000. *Bedell*, 2003 WL 25745982. Arguably, therefore, Bedell's March 2000 motion for reconsideration tolled the statute of limitations until March 31, 2001, or 90 days after its denial in December 2000. *See* § 2244(d)(2). Measuring from that date— March 31, 2001—the statute of limitations period expired on March 31, 2002 approximately 16 years before Bedell filed his present habeas petition.[5] Likewise, Bedell has not satisfied the other three subsections of § 2244(d): first, nothing in Bedell's habeas petition suggests that an action by the State "prevented [him] from filing" a habeas petition, *id.* § 2244(d)(1)(B); second, Bedell does not assert a "constitutional right" that is "newly recognized by the Supreme Court," *id.* § 2244(d)(1)(C); and finally, Bedell does not point to any "factual predicate" underlying his claims. *Id.* § 2244(d)(1)(D). Simply put, Bedell's petition fails to satisfy the one-year statute of limitations.

Moreover, the statute of limitations cannot be equitably tolled under these circumstances. For equitable tolling to apply, Bedell must demonstrate "(1) that he

---

[5] Bedell next moved for reconsideration in May 2002, *Bedell*, 2003 WL 25745982, but that motion did not toll the statute of limitations, because, by then, the one-year limitations period had already expired. For similar reasons, the later post-conviction proceedings initiated by Bedell failed to toll the statute of limitations. *See, e.g.*, *In re Bedell*, 2007 WL 5313337; *Bedell v. Washington Cty. State's Attorney*, 2010 WL 716111.

has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (internal quotation marks omitted); *see also Doe v. Menefee*, 391 F.3d 147, 175 (2d Cir. 2004) ("To qualify for [equitable tolling], the petitioner must establish that extraordinary circumstances prevented him from filing his petition on time, and that he acted with reasonable diligence throughout the period he seeks to toll." (internal quotation marks omitted)). But Bedell's petition reveals no obstacle that prevented him from filing within the limitations period.[6] *See Diaz v. Kelly*, 515 F.3d 149, 154 (2d Cir. 2008) (noting that whether a circumstance is extraordinary depends not on "how unusual the circumstance alleged to warrant tolling is among the universe of prisoners, but rather how severe an obstacle it is for the petitioner endeavoring to comply with [the] limitations period."). Instead, the procedural timeline described above demonstrates that Bedell has continued to file actions in both state and federal court seeking post-conviction relief. As a result, he cannot establish "extraordinary circumstances" that justify equitable tolling.

---

[6] Although Bedell does not claim that the purported acts of the PA-DOC caused him to delay filing his habeas petition (*see generally* Doc. 40), such a claim would have failed, given that "the difficulties attendant on prison life, such as transfers between facilities, solitary confinement, lockdowns, restricted access to the law library, and an inability to secure court documents, do not by themselves qualify as extraordinary [or rare] circumstances." *Corrigan v. Barbery*, 371 F. Supp. 2d 325, 330 (W.D.N.Y. 2005); *accord Floyd v. Kirkpatrick*, No. 16-CV-1034 (JFB), 2017 WL 372054, at *4 (E.D.N.Y. Jan. 26, 2017) ("[T]he circumstances [petitioner] has identified as causing his delay—limited access to the law library and facility transfers—do not qualify as 'extraordinary.'"); *Saldana v. Artuz*, No. 99Civ.5089(DC), 2000 WL 1346855, at *2 (S.D.N.Y. Sept. 19, 2000) (spending six months in "lock down" is not an extraordinary circumstance warranting tolling).

Nor has Bedell adduced evidence establishing that he is actually innocent of the conviction. Actual innocence provides an equitable exception to the statute of limitations by affording "a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Rivas v. Fischer*, 687 F.3d 514, 540 (2d Cir. 2012) (quoting *Schlup v. Delo*, 513 U.S. 298, 315 (1995)). "Actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 615 (1998). This is a "severely confined category" of cases because a petitioner must submit new evidence showing that "it is more likely than not that no reasonable juror would have convicted the petitioner." *McQuiggin v. Perkins*, 569 U.S. 383, 399 (2013) (internal quotation marks and alteration omitted). The same strict standard applies to a petitioner who pleaded guilty and did not have the evidence evaluated by a jury: he or she "must show that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him [or her]." *Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 114 (2d Cir. 2000) (internal quotation marks omitted). Here, Bedell's habeas petition does not rely on new evidence; rather, it rests on Bedell's oft-repeated contention that his conviction violated his religious beliefs as well as his new assertion that his plea was not voluntary. (Doc. 5 at 2.) Because Bedell has not submitted new evidence establishing his actual innocence, he cannot demonstrate that he is entitled to an equitable exception to the statute of limitations.

Bedell's claims to the contrary are not persuasive. As summarized above, in a supplemental brief, Bedell contends that his petition is timely because he "filed

[it] Nov 1999[,] . . . within the one[-]year [limitations period] . . . and [he] asked this Court to freeze that submission." (Doc. 35 at 1.) Although he does not cite the applicable docket number, Bedell may be referencing *Bedell v. Hatch*, No. 1:99-cv-00313-jgm (D. Vt. Oct. 15, 1999), the § 1983 civil rights action that Bedell brought on October 15, 1999. In that suit, Bedell also filed a Motion for Habeas Corpus on Evidence (*id.* Doc. 71), which was denied for failure to exhaust state court remedies. (*Id.* Doc. 81 at 28.) Similarly, in another case before this Court, *Bedell v. Gorczyk*, Docket No. 1:00-cv-00154-jgm-jjn (D. Vt. May 9, 2000), Bedell again sought habeas corpus relief and his petition was denied for failure to exhaust his state court remedies.[7] (*Id.* Doc. 7.) In short, although Bedell claims that he asked this Court to "freeze" his petition, nothing in the Court's records supports that contention.

Moreover, Bedell points to no authority that would allow this Court to stay a habeas petition for 18 years. Although a district court has the discretion to stay a habeas petition containing exhausted and unexhausted claims while the unexhausted claims are fully litigated in state court, "the court should condition the stay on the petitioner's initiation of exhaustion within a limited period, normally 30 days, and a return to the district court after exhaustion is completed, also within a limited period, normally 30 days." *Zarvela v. Artuz*, 254 F.3d 374, 381 (2d Cir.

---

[7] Although Bedell previously filed two habeas petitions before this Court, neither petition implicates the provision of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) barring successive habeas petitions, *see* 28 U.S.C. § 2244(b), because both prior petitions were dismissed without prejudice for failure to exhaust state remedies. *Villanueva v. United States*, 346 F.3d 55, 60 (2d Cir. 2003) ("Because of the restrictions AEDPA imposes on successive petitions, moreover, a first habeas or § 2255 petition will not be considered an adjudication on the merits for successive purposes if the petition was . . . dismissed without prejudice for failure to exhaust state remedies."); *Bell v. Murray*, 340 F. Supp. 2d 323, 328–29 (W.D.N.Y. 2004).

2001). Otherwise, "a habeas petitioner whose petition was dismissed for lack of exhaustion could then wait decades to exhaust his state court remedies and could also wait decades after exhausting his state remedies before returning to federal court to continue his federal remedy, without running afoul of the statute of limitations." *Id.* (internal quotation marks omitted). Here, Bedell's habeas petitions were dismissed for failure to exhaust his state law claims more than 17 years ago. *See Bedell*, No. 1:99-cv-00313-jgm, Doc. 81 at 28; *Bedell*, Docket No. 1:00-cv-00154-jgm-jjn, Doc. 7. After waiting almost two decades, he cannot return to federal court and ask this Court to "[un]freeze" his federal claim in order to avoid the statute of limitations. (*See* Doc. 35 at 1)

Based on the above analysis, I conclude that the statute of limitations bars Bedell's habeas petition; accordingly, the petition should be DENIED.

## II.    Habeas Petition

Even if Bedell's habeas petition was not barred by the statute of limitations, his petition fails because he cannot establish that his state conviction violated federal law. Specifically, the Vermont Supreme Court's decision upholding Bedell's conviction on direct review was not contrary to, nor did it involve an unreasonable application of, the Free Exercise Clause of the U.S. Constitution. Moreover, because the transcripts of Bedell's plea allocution refute his claim that his plea was involuntary or coerced, Bedell does not raise a cognizable claim under the Due Process Clause of the U.S. Constitution. Accordingly, Bedell's habeas petition should also be DENIED on these alternative grounds.

16

## A.    Legal Standard

Under 28 U.S.C. § 2254(a), a state prisoner may challenge "the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  Under this standard, "[e]rrors of state law are not subject to federal habeas review, for 'it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.'"  *Bell v. Ercole*, 631 F. Supp. 2d 406, 414 (S.D.N.Y. 2009) (quoting *DiGuglielmo v. Smith*, 366 F.3d 130, 137 (2d Cir. 2004)).  In short, a petitioner must establish that his state conviction violated federal law.  *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).

"Not every alleged violation of federal law, however, will warrant the issuance of a writ of habeas corpus."  *Bell*, 631 F. Supp. 2d at 414.  Instead, a reviewing court may grant relief only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).[8] The Supreme Court has interpreted the phrase "clearly established Federal law" to mean "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision."  *Williams v. Taylor*, 529 U.S. 362, 412, (2000); *see also Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001).  A decision is "contrary to" clearly established federal law, as determined by the Supreme Court,

---

[8] A petitioner may also secure habeas relief by demonstrating that the adjudication of the claim in state court "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  In this case, however, Bedell does not argue that the state court unreasonably determined the facts in light of the evidence presented.

17

if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. A decision is an "unreasonable application" of clearly established Supreme Court law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.* In applying this standard, courts accord a presumption of validity to a judgment on collateral review; as a result, the petitioner bears the burden of proving that he is entitled to relief by a preponderance of the evidence. *See Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011).

As noted above, Bedell alleges that his state conviction under Vt. Stat. Ann. tit. 13, § 3252(b)(2) violated federal law in two respects: (1) his conviction was an impermissible infringement on his religious rights as a "fundamentalist Mormon with a belief" in polygamy (Doc. 5 at 1–2); and (2), his conviction violated due process because his plea was either involuntary or coerced. (*Id.* at 1.) I address each allegation in turn.

### B.    Free Exercise Claim

First, I conclude that the Vermont Supreme Court's decision upholding Bedell's conviction on direct review did not violate the Free Exercise Clause of the U.S. Constitution.

The Free Exercise Clause of the First Amendment to the United States Constitution, which has been made applicable to the States by incorporation into the Fourteenth Amendment, *see Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940), provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend. I.  Nevertheless, "the right of free exercise does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes). *Emp't Div., Dep't of Human Res. of Oregon v. Smith*, 494 U.S. 872, 879 (1990) (internal quotation marks omitted).[9]  Employing this standard, the U.S. Supreme Court has specifically "rejected the claim that criminal laws against polygamy could not be constitutionally applied to those whose religion commanded the practice." *Id.* (citing *Reynolds v. United States*, 98 U.S. 145, 161–67 (1878)).  In its decision on direct review, the Vermont Supreme Court applied this standard to uphold Bedell's conviction, stating that "there is virtually no precedent for exempting an individual from a criminal law of general application prohibiting sexual assault." *Bedell*, No. 1999-115 (citing *Smith*, 494 U.S. at 878).

---

[9] In response to the Supreme Court's decision in *Employment Division, Department of Human Resources of Oregon v. Smith*, 494 U.S. 872, Congress enacted the Religious Freedom Restoration Act of 1993 ("RFRA"), 42 U.S.C. § 2000bb–bb-4, which set forth a different standard for determining whether neutral laws burdened religious practice.  *See Hankins v. Lyght*, 441 F.3d 96, 105 (2d Cir. 2006).  In *City of Boerne v. Flores*, 521 U.S. 507, 519 (1997), however, the Supreme Court concluded that RFRA was unconstitutional as applied to state law.  *See Hankins*, 441 F.3d at 105 ("The RFRA is therefore unconstitutional as applied to state law.").  Thus, the standard set forth in *Smith* remains applicable to neutral *state* laws of general applicability that burden religious conduct.

Plainly, this was a correct application of federal constitutional law. Bedell was convicted pursuant to Vt. Stat. Ann. tit. 13, § 3252, a neutral law of general application prohibiting sexual assault. A conviction under a neutrally applicable law such as § 3252 is not a violation of Bedell's constitutional right to freely exercise his religion simply because the prohibited conduct was accompanied by religious beliefs. *Smith*, 494 U.S. at 882; *see also Reynolds*, 98 U.S. at 166 ("Laws are made for the government of actions, and while they cannot interfere with mere religious belief and opinions, they may with practices.). Similarly, Bedell's contention that he married his daughter pursuant to the polygamy doctrines of fundamental Mormonism cannot stand because, at the time of his conviction, a neutral law of general application prohibited a man from marrying his daughter. *See* Vt. Stat. Ann. tit. 15, § 1 (repealed by 2009, No. 3, § 12); *see also Bedell*, No. 1999-115 (stating "marriage with a daughter is specifically prohibited," and citing Vt. Stat. Ann. tit. 15, § 1); 15 V.S.A. § 1a (setting forth current law forbidding persons from marrying relatives). As recognized by the U.S. Supreme Court more than 100 years ago, the statute prohibiting Bedell from marrying his daughter is not unconstitutional merely because the prohibited conduct implicated Bedell's religious beliefs. *Reynolds*, 98 U.S. at 166.

Accordingly, Bedell has not established that the Vermont Supreme Court's decision affirming his conviction under Vt. Stat. Ann. tit. 13, § 3252(b)(2) violated the Free Exercise Clause of the U.S. Constitution.

### C.    Due Process Claim

Likewise, Bedell's contention that his plea violated the Due Process Clause of the United States Constitution is meritless because the transcript of Bedell's plea allocution refutes his claim that his plea was involuntary or coerced.

### 1.    Exhaustion

Prior to addressing the substance of Bedell's due process claim, I must address his failure to exhaust the claim in state court. As set forth below, although the Court could dismiss Bedell's petition to allow him to exhaust the due process claim in state court, I recommend that the Court exercise its discretion pursuant to 28 U.S.C. § 2254(b)(2) and deny the claim on its merits.

Prior to bringing a petition for habeas corpus in federal court, a petitioner must first exhaust the remedies available in state court or demonstrate that "there is an absence of available State corrective process [or] [that] circumstances exist that render such process ineffective to protect the rights of the applicant." *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 808 (2d Cir. 2000) (alterations in original) (quoting § 2254(b)(1)). To have exhausted his or her claims in state court, a petitioner must have "fairly presented" each federal claim to the highest state court. *Id*. (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)). "A petitioner has 'fairly presented' his claim only if he has 'informed the state court of both the factual and the legal premises of the claim he asserts in federal court.'" *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997) (quoting *Daye v. Attorney Gen. of N.Y.*, 696 F.2d 186, 191 (2d Cir. 1982)). A petitioner's federal habeas claim, in other words, must be the

"substantial equivalent" of the claim presented in state court. *Strogov v. Attorney Gen. of N.Y.*, 191 F.3d 188, 191 (2d Cir. 1999) (quoting *Picard*, 404 U.S. at 278).

In this case, Menard argues that Bedell's state remedies have not been exhausted, contending that "the parties have yet to resolve the remaining claim of the voluntariness of [Bedell's] guilty . . . plea." (Doc. 27 at 4.)  As noted above, in a December 6, 2016 decision, the superior court concluded that Bedell had plausibly stated a claim that his plea was involuntary and allowed that claim to proceed. *Bedell*, 2016 WL 10860906, at *1.  According to the superior court docket, *Bedell*, 585-9-15 Wncv, this claim remains pending; specifically, the most recent order entered on August 15, 2018, indicates that the superior court is awaiting briefing relating to a summary judgment motion filed by Menard.  Because Bedell's claim that his plea was involuntary is still pending before the superior court, it has not been exhausted.  On the other hand, given that Bedell raised his free exercise claims on direct appeal to the Vermont Supreme Court, *see Bedell*, No. 1999-115, that claim has clearly been exhausted.  *Dorsey*, 112 F.3d at 52 (stating that exhaustion requires a petitioner to "fairly present" his claim to the highest state court).  Bedell's petition is therefore a "mixed petition," containing both exhausted and unexhausted claims.  *Rose v. Lundy*, 455 U.S. 509, 510 (1982).

Prior to the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a district court was required to dismiss such "mixed petitions." *See Rose*, 455 U.S. at 522 ("[B]ecause a total exhaustion rule promotes comity and does not unreasonably impair the prisoner's right to relief, we hold that a district

22

court must dismiss habeas petitions containing both unexhausted and exhausted claims."). But now, "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2); *see also Pulinario v. Goord*, 291 F. Supp. 2d 154, 171 (E.D.N.Y. 2003) ("Pursuant to AEDPA, a district court may now, in its discretion, *deny* on the merits habeas petitions containing unexhausted claims—so-called 'mixed petitions.'"); *Mallet v. Miller*, 432 F. Supp. 2d 366, 375 (S.D.N.Y. 2006) ("[T]his Court may choose to consider the unexhausted claim on its merits, notwithstanding the absence of exhaustion.").

As discussed below, I conclude that Bedell's claim that his plea was involuntary is meritless and, as a result, I recommend that the Court exercise its discretion under 28 U.S.C. § 2254(b)(2) and deny Bedell's habeas petition on the merits.

## 2.   **Involuntary or Coerced Plea**

A guilty plea "is a grave and solemn act to be accepted only with care and discernment." *Brady v. United States*, 397 U.S. 742, 748 (1970). To protect a defendant's rights during this grave procedure, due process requires a defendant's guilty plea to be voluntary, knowing, and intelligent. *See Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005); *United States v. Ruiz*, 536 U.S. 622, 629 (2002). "A plea is 'intelligent' and 'voluntary' when a defendant had the advice of counsel, understood the consequences of his plea and the plea was not physically or mentally coerced." *Heron v. People*, 98 Civ. 7941, 1999 WL 1125059 at *5 (S.D.N.Y. Dec. 8, 1999); *see*

*also Miller v. Angliker*, 848 F.2d 1312, 1320 (2d Cir. 1988) ("[A] plea is deemed 'intelligent' if the accused had the advice of counsel and understood the consequences of his plea, even if only in a fairly rudimentary way; it is deemed 'voluntary' if it is not the product of actual or threatened physical harm, mental coercion overbearing the defendant's will, or the defendant's sheer inability to weigh his options rationally.").

If properly administered—that is, if the plea is knowing, intelligent, and voluntary—"dispositions by guilty plea are accorded a great measure of finality." *Blackledge v. Allison*, 431 U.S. 63, 71 (1977). To preserve the finality of a defendant's properly administered plea, "the representations of the defendant, his lawyer, and the prosecutor at [the original plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Id.* at 73–74. Accordingly, in habeas proceedings, a defendant's prior "[s]olemn declarations in open court carry a strong presumption of verity[,]" and "[t]he subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Id.* at 74; *United States v. Napolitano*, 212 F. Supp. 743, 747 (S.D.N.Y. 1963) (stating that a defendant's admissions during a guilty plea are solemn declarations and "are not to be lightly disregarded in favor of his present self-serving assertion[s]"); *United States v. Caesar*, No. 94 CR. 59 (PKL), 1995 WL 312443, at *3 (S.D.N.Y. May 23, 1995) (stating that a defendant's statements during a plea allocution "are conclusive

absent credible reason justifying departure from their apparent truth" (internal quotation marks omitted)).  On the other hand, if the plea was not properly administered, a habeas petitioner "is entitled to avail himself of the writ in challenging the constitutionality of his custody." *Blackledge*, 431 U.S. at 72.

In this case, the plea transcript does not support Bedell's claim that his plea was either coerced or involuntary.  Although Bedell claims in his petition that, "[while he was under the influence of] drugs[, he was taken] to court to force [his] plea" (Doc. 5 at 1), and that he stated "I do not understand" in response to the court's inquiries at his change-of-plea hearing (*id*. at 3), he provides no evidence in his petition or elsewhere to support these assertions.

Rather, the transcript of the plea hearing contradicts Bedell's claims, revealing that Bedell affirmed that he had read the plea agreement and consulted his attorney about the agreement, acknowledged that he understood the nature of the charges, agreed with the prosecutor's summary of the facts, stated that no one had threatened or coerced him into pleading guilty, agreed to the sentencing range offered in exchange for his guilty plea, and confirmed that he understood the constitutional rights he was waiving by pleading guilty.  (Doc. 27-19 at 18–25.) Bedell specifically denied that he had been coerced into pleading guilty, stating: "This is my free act."  (*Id*. at 25.)  He also admitted that, although he had been under the influence of drugs on the previous day, he was now in "a better frame of mind."  (*Id*. at 21.)  To support this admission, the superior court closely questioned Bedell's counsel, who stated that a doctor from the Vermont State Hospital had

25

concluded that Bedell was no longer intoxicated by drugs and that Bedell could make competent choices. (*Id.* at 22.) Bedell then confirmed that his counsel had accurately summarized the doctor's conclusions regarding his competency. (*Id.* at 22–23.) Next, the prosecutor recited the factual basis for the charge and Bedell admitted to the prosecutor's summary of the facts. (*Id.* at 23–24.) In sum, the transcript of Bedell's change-of-plea hearing demonstrates that the court carefully ensured that Bedell's guilty plea was voluntary, knowing, and intelligent.

Weighed against this record, Bedell has merely provided "conclusory allegations unsupported by specifics," *Blackledge*, 431 U.S. at 74, which are insufficient to sustain his claim that his plea proceeding violated federal law. *See also Reed v. Brown*, No. 10 CIV. 3072 PGG AJP, 2011 WL 498363, at *11 (S.D.N.Y. Feb. 14, 2011), *report and recommendation adopted*, No. 10 CIV. 3072 PGG AJP, 2012 WL 34092 (S.D.N.Y. Jan. 6, 2012) (concluding plea transcript refuted petitioner's claims that medication affected his ability to understand the plea proceedings); *Roesch v. Fischer*, No. 02-cv-6041 (JG), 2003 WL 1623082, at *2 (E.D.N.Y. Mar. 7, 2003) (determining petitioner's assertion that he was incapacitated by drugs at the time of the plea was not supported by the transcript); *see also Rosenberger v. United States*, 133 F. App'x 799, 801 (2d Cir. 2005) ("[Defendant] has set forth no evidence, other than his self-serving, conclusory allegations, that he was coerced into pleading guilty. Moreover, the plea allocution indicates that [defendant's] guilty plea . . . was knowing and voluntary.").

Accordingly, because the record reveals that Bedell's guilty plea was neither coerced nor involuntary, his due process claim is meritless. Likewise, as discussed above, the Vermont Supreme Court's decision affirming Bedell's conviction was not contrary to, nor did it involve an unreasonable application of, the Free Exercise Clause of the Constitution. As a result, because Bedell has failed to establish that his conviction violated either the Constitution's Free Exercise or Due Process Clause, his habeas petition must be DENIED.

## III.  Request for Transport Order

Finally, the Court addresses Bedell's letter seeking a "transport order" (Doc. 40), in which Bedell asks this court to order his transport to a Vermont prison because Pennsylvania correctional officers allegedly prevented his meaningful access to the courts by destroying his personal belongings and legal work, along with placing him in segregation. (*Id.*)  As support, Bedell has attached a report from the PA-DOC, indicating that Bedell was placed in protective segregation to ensure his safety. (Doc. 40-1 at 1.)  Construing Bedell's allegations to raise the strongest possible argument in his favor, as this Court must, *McPherson*, 174 F.3d at 280, Bedell appears to seek injunctive relief from the conditions of his confinement under 42 U.S.C. § 1983.[10]  Therefore, the Court construes Bedell's letter as a motion for injunctive relief.

---

[10]  To the extent that Bedell seeks either a temporary restraining order or preliminary injunction, he does not cite to Federal Rule of Civil Procedure 65 as a basis for his request. (*See generally* Doc. 40.)  And, in any case, Bedell has failed to credibly claim "irreparable harm" and to allege sufficient facts showing either "a likelihood of success on the merits" or "sufficiently serious questions going to the merits of [his] claim[]." *Stagliano v. Herkimer Cent. Sch. Dist.*, 151 F. Supp. 3d 264, 272 (N.D.N.Y. 2015) (internal quotation marks omitted).

As an initial matter, the motion for injunctive relief suffers from three procedural infirmities, any of which is fatal on its own. First, neither the PA-DOC nor individual Pennsylvania correctional officers are parties to the pending case before this Court and, thus, the court cannot enjoin their actions. *See Messiah v. Pafumi*, No. 3:12-CV-1582 VLB, 2013 WL 4711154, at *1 (D. Conn. Aug. 30, 2013) ("Because the court does not have in personam jurisdiction over . . . [the] prison officials, it cannot enjoin their actions."); *see also Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 110 (1969) ("It is elementary that one is not bound by a judgment in personam resulting from litigation in which he is not designated as a party or to which he has not been made a party by service of process. The consistent constitutional rule has been that a court has no power to adjudicate a personal claim or obligation unless it has jurisdiction over the person of the defendant." (citations omitted)). Second, the motion does not allege that Menard had any personal involvement either in the Pennsylvania correctional officers' purported destruction of Bedell's personal belongings and legal work or in the placement of Bedell in segregation. (Doc. 40.) Absent an allegation of personal involvement, Bedell cannot establish a claim under 42 U.S.C. § 1983. *See Warren v. Pataki*, 823 F.3d 125, 136 (2d Cir.) (2016) ("To establish a section 1983 claim, a plaintiff must establish a given defendant's personal involvement in the claimed violation in order to hold that defendant liable in his individual capacity." (internal quotation marks omitted)). Third, Bedell does not allege that he exhausted his administrative remedies prior to filing his motion with this Court. Thus, 42 U.S.C.

28

§ 1997e(a) bars Bedell from bringing an action under 42 U.S.C. § 1983. *Macias v. Zenk*, 495 F.3d 37, 40 (2d Cir. 2007) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." (internal quotation marks omitted)).

In addition to these procedural failings, Bedell has failed to allege a constitutional violation sufficient to invoke 42 U.S.C. § 1983. "Prisoners have a constitutional right of access to the courts that requires states 'to give prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights.'" *Collins v. Goord*, 438 F. Supp. 2d 399, 415 (S.D.N.Y. 2006) (quoting *Bounds v. Smith*, 430 U.S. 817, 822, 825 (1977)). But "[t]his principle . . . requires only that prisoners' access to the courts be adequate, effective, and meaningful, and does not preclude the balancing of prisoners' rights with the legitimate interests of the states, including economic concerns." *Dugar v. Coughlin*, 613 F. Supp. 849, 853 (S.D.N.Y. 1985) (internal quotation marks and citation omitted). A prisoner seeking to prove that his access to the courts has been unconstitutionally denied "must show . . . that a nonfrivolous legal claim had been frustrated or was being impeded due to the actions of prison officials." *Warburton v. Underwood*, 2 F. Supp. 2d 306, 312 (W.D.N.Y. 1998) (internal quotation marks omitted). Here, Bedell makes no allegation that his ability to pursue legal claims was frustrated by the PA-DOC or individual Pennsylvania correctional officers.

Accordingly, I conclude that Bedell's motion for injunctive relief is both procedurally and substantively deficient, and I recommend that the motion (Doc. 40) be DENIED.[11]

## Conclusion

As set forth above, Bedell's habeas petition (Doc. 5), is barred by the applicable statute of limitations. Alternatively, Bedell has failed to state a claim that the Vermont Supreme Court's decision denying him relief on direct appeal was "contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1). Moreover, because the evidence indicates that Bedell's guilty plea was neither coerced nor involuntary, his due process claim is meritless. For these and the other reasons explained above, I recommend that Bedell's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus (Doc. 5), be DENIED. I also recommend that Bedell's letter request for a "transport order," which I construe as motion for injunctive relief under 42 U.S.C. § 1983 (Doc. 40), be DENIED.

I further recommend that the Court refrain from issuing a certificate of appealability. In a § 2254 proceeding, a certificate of appealability may issue "only

---

[11] Although Menard has not responded to Bedell's request for a "transport order," "a district court may, *sua sponte*, address whether a *pro se* prisoner has failed to state a claim upon which relief may be granted." *Jackson v. Onondaga Cty.*, 549 F. Supp. 2d 204, 211 (N.D.N.Y. 2008). This authority arises from 28 U.S.C. § 1915(e)(2)(B)(ii), which provides that, in the case of a prisoner proceeding *in forma pauperis*, such as Bedell, "the court shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted." *See Jackson*, 549 F. Supp. 2d at 211 n.14; *see also Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 364 (2d Cir. 2000) ("district courts may dismiss a frivolous complaint *sua sponte* even when the plaintiff has paid the required filing fee"); *Marsden v. Fed. Bureau of Prisons*, 856 F. Supp. 832, 836 n.3 (S.D.N.Y. 1994) ("district courts [have] the discretionary authority to dismiss *sua sponte* a complaint filed *in forma pauperis* when it is . . . based on an indisputably meritless legal theory." (internal quotation marks omitted)).

if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Under this standard, a certificate will not issue unless reasonable jurists could debate whether the petition should have been resolved in a different manner, or the issues are "adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted). Here, reasonable jurists could not debate whether Bedell's petition should have been resolved in a different manner.

Dated at Burlington, in the District of Vermont, this 2nd day of October 2018.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within 14 days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision." *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).